| ADVERSARY PROCEEDING COVER SHEET | ADVERSARY PROCEEDING NUMBER |
|---|---|
| **PLAINTIFFS**<br>David M. Nickless, Trustee | **DEFENDANTS**<br>**Pioneer Industrial Corp., Alibaba.com, Inc.** |
| ATTORNEY (Firm Name, Address, and Telephone No.)<br>James L. O'Connor, Jr.<br>Nickless and Phillips, P.C.<br>625 Main Street<br>Fitchburg, MA 01420<br>(978) 342-4590 | ATTORNEY (Firm Name, Address, and Telephone No.) |
| PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>**X** Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor **X** Other<br>☐ Trustee |

CAUSE OF ACTION: (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**COMPLAINT TO REACH AND APPLY AND FOR INJUNCTIVE RELIEF**

NATURE OF SUIT
(Number of up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11- Recovery of money/property - § 542 turnover of property
☐ 12- Recovery of money/property - § 547 preference
☐ 13- Recovery of money/property - § 548 fraudulent transfer
☐ 14- Recovery of money/property – other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21 – Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale Property**
☐ 31 – Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 – Objection/ revocation of discharge § 727 (c),(d),(e)

**FRBP 7001 (5) Revocation of Confirmation**
☐ 51 – Revocation of Confirmation

**RFBP 7001(6) – Dischargeability**
☐ 66 - Dischargeability - § 523(a)(1), (14), (14a) priority tax claims
☐ 62 – Dischargeability - § 523(a)(2), false pretenses, false representation, actual fraud
☐ 67 – Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61 – Dischargeability - § 523(a)(5), domestic support
☐ 68 - Dischargeability - § 523(a)(6), willful and malicious injury
☐ 63- Dischargeability - § 523(a)(8), student loan
☐ 64 - Dischargeability - § 523(a)(15), divorce of separation obligation (other than domestic support)
☐ 65 – Dischargeability - other

**FRBP 7001 (7) – Injunctive Relief**
☐ 71 – Injunctive relief – imposition of stay
**X** 72 – Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81 – Subordination of claim or interest

**FRBP 7001 (9) Declaratory Judgment**
☐ 91 – Declaratory Judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01 – Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§ 78aaa *et. seq.*
**X** 02 – Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law    ☐ Check if this is asserted to be a class action under FRCP 23
☐ Check if a jury trial is demanded in complaint    Demand $

Other Relief Sought **Temporary Restraining Order, Reach and Apply, Judgment for the Trustee to Issue Permanent Injunction, Trustee's Costs and Attorney's Fees**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Autogrip, Inc. | BANKRUPTCY CASE NUMBER<br>94-44675 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Worcester | DIVISIONAL OFFICE<br>Western | NAME OF JUDGE<br>Henry J. Boroff |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*[signature: James L. O'Connor]*

DATE: 4-11-08

PRINT NAME OF ATTORNEY (OR PLAINTIFF)
James L. O'Connor, Jr.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| In re<br>Autogrip, Inc.<br>    Debtor(s) | Chapter 7<br>No. 94-44675-HJB |
| David M. Nickless, Trustee,<br>    Plaintiff<br><br>v.<br><br>Pioneer Industrial Corp., Defendant and<br><br>Alibaba.com, Inc.<br>Reach and Apply Defendant | Adv. Pro.<br>No. 08- |

## COMPLAINT TO REACH AND APPLY AND FOR INJUNCTIVE RELIEF

1. This matter is a core proceeding and this Court has jurisdiction pursuant to 28 U.S.C. § 157 and § 1334 (a) and (b). Venue is proper in this Court pursuant to 28 U.S.C § 1409(a).

2. The Debtor(s) filed for protection under Chapter 7 of the U.S. Bankruptcy Code on October 21, 1994.

3. The Plaintiff, David M. Nickless ("Trustee") was appointed Successor Trustee on February 8, 2007.

4. The Defendant Pioneer Industrial Corp. ("Pioneer") is a corporation with a principal place of

business in Taipei City, Taiwan.

5. The Reach and Apply Defendant Alibaba.com, Inc. ("Alibaba") is a Chinese company engaged in electronic commerce and communications, operating one of the world's largest online marketplaces for international and Chinese trade. Alibaba is, upon information and belief, incorporated in Delaware and the Grand Cayman Islands, and conducts its US business from offices in Santa Clara and Newark, California. Alibaba is in possession of property, or an interest in property, of Pioneer and is a necessary party to this action.

6. On or about February 27, 2001, the prior Chapter 7 Trustee recovered a default judgment ("the Judgment") in the amount of $121,700 against Pioneer in an adversary proceeding styled *Stephen M. Rodolakis, Chapter 7 Trustee v. Pioneer Industrial Corp., Adversary proceeding No. 96-4411.*[1] A true and accurate copy of the writ of execution issued by this Court is attached as Exhibit 1 to this Complaint.

7. The Judgment against Pioneer remains unpaid and unsatisfied.

8. Upon information and belief, Pioneer conducts business throughout the world, including in the US, through the services of Alibaba. A true and accurate copy of the Pioneer website is attached as Exhibit 2. The Pioneer website contains references and links to Alibaba and identifies Pioneer as a supplier of goods available to purchasers via the Alibaba website. The Pioneer website states that 91-100% of Pioneer's annual sales

---

[1] Stephen M. Rodolakis is the prior chapter 7 Trustee in this case.

2

volume of $5-$10 Million is exported.

9. According to its 2007 annual report, Alibaba generates income from the sale of memberships to suppliers, such as Pioneer, consisting of the sale of keywords and premium placements. The memberships are usually one to two year membership contracts which are typically paid in full at the start of the contract. True and accurate copies of excerpts from the Alibaba 2007 annual report are attached as Exhibit 3.

10. Upon information and belief, Alibaba does not charge buyers to use its services, however, Alibaba does provide a payment service to purchasers including a service known as "Alipay."

11. Upon information and belief, Alibaba is in possession of property of the Defendant Pioneer including any and all unused, pre-paid membership contracts (which are analogous to pre-paid rent) and any and all payments from customers being processed through or by Alibaba, including through or by Alipay.

## COUNT I

12. The Trustee repeats and re-alleges each and every allegation in paragraphs 1- .

13. Property, or an interest in property, of the Defendant Pioneer is in the possession of the Reach and Apply Defendant Alibaba and is not liable to be taken on execution and is not subject to attachment.

14. The property, or interest in property, of the Defendant Pioneer is in the possession of the Reach and Apply Defendant Alibaba and is subject to a reach and apply action pursuant to M.G.L. c. 214, § 3(6).

15. Alternatively, the property, or interest in property, of the Defendant Pioneer, in the possession of the Reach and Apply Defendant Alibaba, is subject to a reach and apply action pursuant to 11 U.S.C. § 105.

16. Based on the aforementioned facts there is a substantial likelihood that the Trustee will succeed on the merits of this action to obtain a judgment to reach and apply the property, or interest in property, of Pioneer in the possession of Alibaba to be applied to the unpaid Judgment.

17. The bankruptcy estate will suffer irreparable harm absent the grant of a temporary restraining order and/or preliminary injunction enjoining Alibaba from directly or indirectly alienating, transferring, or encumbering the property, or any interest therein, of Pioneer.

18. The balance of the relevant equities weighs in favor of granting the Trustee the preliminary injunction requested herein.

19. The effect of the Court granting the Trustee the preliminary injunction requested herein is consistent with the public interest.

## PRAYERS FOR RELIEF

WHEREFORE, David M. Nickless, Trustee requests that this Court order the following:

1. A Temporary Restraining Order:

    enjoining the Reach and Apply Defendant Alibaba and its agents, employees, and officers from transferring property, or any interest therein, of the Defendant Pioneer and its successors and assigns or otherwise directly or indirectly alienating, transferring, or encumbering the property, or any interest therein, of the Defendant Pioneer and its successors and assigns; and

    ordering the Reach and Apply Defendant Alibaba and its agents, employees, and officers to turn over to the Trustee any and all property, or any interest therein, of the Defendant Pioneer and its successors and assigns to be applied against the Judgment held by the Trustee until the Judgment is satisfied in full; and

    ordering the Reach and Apply Defendant Alibaba to disclose and produce in writing to the Trustee within 10 days of this order all transactions in which the Defendant Pioneer has participated from the date of the Judgment to the present, including the names and addresses of all buyers or counterparties to transactions in which Pioneer participated.

2. After hearing, issue an appropriate Preliminary Injunction extending and incorporating the terms of the Temporary Restraining Order.

3. After trial on the merits grant judgment for the Trustee and issue an appropriate Permanent Injunction extending and incorporating the terms of the Temporary Restraining Order and barring Alibaba from doing business with Pioneer, or its successors, and assigns until such time as Pioneer has satisfied in full the Judgment held by the Trustee.

4. Award the Trustee his costs including attorneys' fees.

5. Such other and further relief as is just.

>Respectfully,
>David M. Nickless, Successor Trustee


>/S/  James L. O'Connor, Jr.
>James L. O'Connor, Jr., Esq.
>David M. Nickless, Successor Trustee
>Nickless and Phillips, P.C.
>625 Main Street
>Fitchburg, MA  01420
>(978) 342-4590
>BBO No. 563450
>joconnor.nandp@verizon.net

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

IN RE:
    Auto Grip, Inc.
                    DEBTOR

CASE NO: 94-44675HJB

CHAPTER: 7

Stephan M. Rodolakis
          PLAINTIFF

VS

Pioneer Industrial Corp.,
          DEFENDANT

ADVERSARY PROCEEDING

NO. 96-4411

### WRIT OF EXECUTION

TO THE MARSHAL OF THE DISTRICT OF MASSACHUSETTS, OR ANY OF HIS DEPUTIES, OR ANY OTHER SPECIALLY APPOINTED PROCESS SERVER:

**WHEREAS PLAINTIFF** Stephan M. Rodolakis recovered Judgment on February 27, 2001 against **DEFENDANT,** Pioneer Industrial Corp. in the amount of $121,700.00 plus interest and costs, debt or damage, as to us appears of record, and whereas execution remains to be done on this Judgment;

**WE COMMAND YOU,** therefore, that of the goods and chattels or lands of said **DEFENDANT,** Pioneer Industrial Corp. you cause to be paid and satisfied unto the said **PLAINTIFF** Stephan M. Rodolakis, at the value thereof, in money, the aforesaid sums, being $121,700.00 in the whole, with interest thereon from said day of the rendition of said Judgment; and thereof also to satisfy yourself for your own fees.

**HEREOF FAIL NOT,** and make return of this writ, with your doings thereon into the Clerk's Office of our said Court, at Boston within the District of Massachusetts, within twenty (20) years after the date of said Judgment, or within ten (10) days after this writ has been satisfied or discharged.

BY THE CLERK,
JAMES M. LYNCH

DATE:

March 14, 2006

BY:

Patricia Simonelli
DEPUTY CLERK



K-91

 Translate this page| Alibaba.com HomePage | My Alibaba |    Search Alibaba.com [Go]

2nd year 

# PIONEER INDUSTRIAL CORP

| Home | Products | Selling Leads | TrustPass Profile | About Us | Contacts |

**search our products** [SR]

**Products**
- Others [2]
- Games [2]
- Drawing & Art Set [2]
- Eraser & Rubber [6]
- Pen & Pencil, etc [14]
- Ballpoint Pens [3]

**Company Profile**
**Certificates**
**Trade Show**

**Contact Us**
PIONEER INDUSTRIAL CORP
[Taiwan]

**Street Address :** 14th Fl.,139 Sung Chiang Rd.
**City :** Taipei
**Province/State :** TW
**Country/Region :** Taiwan

Offline

View Contact Details

Pioneer, the original inventor and manufacturer of non-sharpening pencils, has developed various kinds of stationery, especially writing instruments. After years of experience, our four factories are fully equipped to handle ODM / OEM requirements and our brand name BENSIA has made us a leading company in the field of stationery in Taiwan.
Our product features creative ideas and fancy designs. Hence, it is most suitable for companies active in the school, gift & toys market. However, we also ...
Read more

Offline

**Selected Products**    See more

| Ball Pen | Non-Sharpening Pencil | Eraser | 2 In 1 Eraser With Sharpener | Glitter Wooden Pencils |
| Ruler Set | Eraser Pencil | Stationery Set, Promotional Gifts, Pencil Set | Wooden colored pencil | Gel pen |
| Shaped Eraser | Eraser | Mechanical eraser | Golf Stationary Set | Sharpener |
| Scribble Bear | Erasers With Fragrance | Ball Pen | Mechanical Pen / Pencil | Promotional Pen & Pencil |

**Company Profile**    More

**Basic Information**

| Company Name: | PIONEER INDUSTRIAL CORP |
| Business Type: | Manufacturer |
| Product/Service: | Non-Sharpening Pencil, Wooden Pencil, Gel Pen, Mechanical Pencil, Mechanical Pen, Ball Pen, Eraser, Ruler |
| Brands: | Bensia |
| Number of Employees: | 501 - 1000 People |

**Trade & Market**

| | |
|---|---|
| Main Markets: | North America |
| | South America |
| | Eastern Europe |
| | Southeast Asia |
| | Africa |
| | Oceania |
| | Mid East |
| | Eastern Asia |
| | Western Europe |
| Total Annual Sales Volume: | US$5 Million - US$10 Million |
| Export Percentage: | 91% - 100% |
| Total Annual Purchase Volume: | US$2.5 Million - US$5 Million |

**Factory Information**

| | |
|---|---|
| Factory Size (Sq.meters): | 1,000-3,000 square meters |
| Factory Location: | Taiwan / Thailand / Vietnam |
| QA/QC: | In House |
| Number of Production Lines: | 5 |
| Number of R&D Staff: | 11 - 20 People |
| Number of QC Staff: | 11 - 20 People |
| Management Certification: | ISO 9000/9001/9004/19011: 2000 |
| Contract Manufacturing: | OEM Service Offered |

**Send a message directly to this member**

Offline

Email this page    Bookmark this page    Print this Page

**Company Info · Partnerships**
Alibaba.com - Gold Suppliers - Buy - Sell - Trade Shows - My Alibaba - China Export Services
Company Info - Help - Site Map - Customer Service
Browse Alphabetically: All Products, Importers, China, Countries - Archive

Alibaba Group: Alibaba.com: Alibaba China - Alibaba International - Alibaba Japan | Taobao | Alipay | Yahoo! China | Koubei.com | Alisoft | Alimama

Product Listing Policy - Intellectual Property Policy and Infringement Claims - Privacy Policy - Terms of Use - Safe Trading Tips - Report Intellectual Property Right Infringement
Copyright Notice © 1999-2008 Alibaba.com Limited and/or its subsidiaries and licensors. All rights reserved.

EXHIBIT 3

# Global Trade Starts Here

**Alibaba.com — Where smart buyers find suppliers online**

Case 08-04067 Doc 1 Filed 04/11/08 Entered 04/11/08 12:27:08 Desc Main
Document Page 13 of 17

# Global E-Commerce Leader

**Alibaba.com – The world's leading B2B e-commerce company**

Case 08-04067 Doc 1 Filed 04/11/08 Entered 04/11/08 12:27:08 Desc Main
Document Page 13 of 17

4  Alibaba.com  Annual Report 2007 ▷▷

# Milestones

Jack Ma, our lead founder and chairman, and 18 other founders launched Alibaba.com in his Hangzhou apartment in 1999. Originally, Alibaba.com operated as a bulletin board service for businesses to post buy and sell trade leads, and later became a vibrant marketplace for small and medium enterprises around the world to identify potential trading partners and interact with each other to conduct business online. Alibaba.com was listed on the Main Board of the Hong Kong Stock Exchange on November 6, 2007 and is the flagship business of Alibaba Group.



▷ **October**
Launched Gold Supplier membership to serve China exporters

**2000**

**1999**
▷ Established Alibaba Group

**2001**

▷ **August**
Launched International TrustPass membership to serve exporters outside China


We generate revenue primarily by selling membership packages and value-added services to suppliers participating in our international and China marketplaces.

Our total revenue increased from RMB1,363.9 million in 2006 to RMB2,162.8 million in 2007, representing a growth of 58.6%. This increase was mainly due to the expansion in the number of paying members in both our marketplaces as well as the increase in the average spending per paying member.

**International marketplace**
Revenue from our international marketplace primarily consists of:

- Revenue from the sale of Gold Supplier membership packages and value-added services, principally consisting of the sale of keywords and premium placements to Gold Supplier members;

- Revenue from the sale of International TrustPass membership packages; and

- Other revenue, which represents commission income we receive from Alisoft, a wholly-owned subsidiary of Alibaba Group, for cross-selling the software developed by Alisoft to our Gold Supplier members.

Revenue from our international marketplace increased by 56.0% from RMB991.9 million in 2006 to RMB1,547.7 million in 2007, primarily due to an increase in the number of Gold Supplier members, as well as an increase in the sale of value-added services. Furthermore, we commenced cross-selling software developed by Alisoft in 2007 and as a result, we recorded other income of RMB11.5 million, being commission income received from Alisoft.

**China marketplace**
Revenue from our China marketplace primarily consists of:

- Revenue from the sale of China TrustPass membership packages and value-added services, which mainly consist of keyword bidding and premium placements to China TrustPass members; and

- Other revenue, which principally consists of online placement services that allow companies to display online branded advertisements in our China marketplace.

Revenue from our China marketplace increased by 65.3% from RMB372.0 million in 2006 to RMB615.1 million in 2007, largely due to an increase in the number of China TrustPass members as well as an increase in membership price and the sale of value-added services such as keyword bidding and premium placements. In addition, the roll-out of sales of branded advertisements on our China marketplace during the year also contributed to the increase in revenue.

**Revenue recognition**
*Membership packages.* Our paying members typically enter into one-year or two-year membership contracts with us. We typically collect the full amount of our fees at the time we enter into the contract, and we initially record the amounts received as customer advances. After we enter into a membership contract, we begin producing storefronts for our paying members and our paying members are required to go through certain third party authentication and verification procedures. If a paying member does not pass the authentication and verification procedures, we refund the amount we received under the contract less the authentication and verification fees that we pay to the third party service





"We ride on Alibaba.com's influence in the buyer community. We post the latest products on Alibaba.com to attract potential buyers."

**Mr. King Jin**
Zhejiang Zhuguang Group Linhai Automatic Embroidery Equipment Co Ltd
China

provider and other related expenses. After we complete our production processes and the paying member passes the authentication and verification procedures, we display the paying member's storefront in our marketplaces, and the amounts paid by the paying member become non-refundable. When we display the paying member's storefront in our marketplaces, amounts previously recorded as customer advances are transferred to deferred revenue, and the revenue in respect of the membership package is recognized ratably over the term of the membership contract.

*Keyword Purchases and Premium Placements.* Our Gold Supplier members may purchase keywords to increase the exposure of their listings and storefronts on our international marketplace. We also offer our Gold Supplier members a premium placement service that allows them to promote their listings and storefronts on our international marketplace by displaying links at designated positions on our website. We initially record the fees we receive as customer advances. Once the value-added services becomes activated for the Gold Supplier member, we reclassify the amounts received as deferred revenue, and revenue from value-added services is generally recognized in respect of the service ratably over the term of the relevant Gold Supplier membership contract if the fair value of the membership package cannot be objectively measured.

In the event the fair value of the value-added services can be objectively measured, service fees from such value-added services are recognized as revenue ratably over the contracted service period of the value-added services.

*Keyword Bidding and Premium Placements.* Our China TrustPass members may purchase additional keywords through a monthly program that allows members to bid for keywords at prices that are established by an auction mechanism. We collect fees for keyword bidding in the month the member makes a successful bid, and we recognize the revenue in respect of such service in the following month during which the service of displaying links to the paying member's storefront and listings in the relevant keyword search results is delivered. Similar to our international marketplace, we also offer our China TrustPass members a premium placement service that allows them to promote their listings and storefronts on our China marketplace at designated positions on our website. Fees collected from customers for premium placement are collected upfront and are recognized as revenue ratably over the service period.

**Cost of revenue and gross profit**

The following table presents, for the years indicated, a breakdown of cost of revenue and its components as a percentage of revenue:

|  | Year ended December 31, | | | |
|---|---|---|---|---|
|  | 2007 | | 2006 | |
|  | **RMB'000** | **% of revenue** | RMB'000 | % of revenue |
| Revenue | **2,162,757** | **100%** | 1,363,862 | 100% |
| Cost of revenue |  |  |  |  |
| Business taxes and surcharges | **(110,545)** | **(5.1)** | (69,394) | (5.1) |
| Authentication and verification expenses | **(20,031)** | **(1.0)** | (15,540) | (1.1) |
| Bandwidth and depreciation expenses | **(38,771)** | **(1.8)** | (30,983) | (2.3) |
| Staff costs and other expenses | **(110,766)** | **(5.1)** | (121,708) | (8.9) |
| Total | **(280,113)** | **(13.0)** | (237,625) | (17.4) |
| Gross profit | **1,882,644** | **87.0%** | 1,126,237 | 82.6% |

2 SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (Continued)

**2.15 Revenue recognition (Continued)**

(a) *B2B services*
The Group's online B2B marketplaces facilitate e-commerce between suppliers and buyers. The Group earns its revenues from service fees received from suppliers ("paying members") while buyers may use the marketplaces to conduct business at no charge. Service fees are received by the Group in respect of the sale of membership packages which provide priority placement of paying members' storefronts and listings in the industry directory and search results on the Group's marketplaces. Additional revenue is generated from service fees from paying members in respect of the sale of value-added services, including sale of additional keywords to improve the paying member's rankings in search results on the Group's marketplaces and sale of premium placements on the web pages to increase the paying member's exposure to potential buyers.

Service fees are paid in advance in respect of the above services for a specific contracted service period. All service fees are initially deferred when received and revenue is recognized ratably over the term of the respective service contracts as the services are rendered.

Value-added services are normally purchased by paying members together with the membership packages within its contracted service period. In the event the fair value of the respective membership package and the value-added services cannot be objectively measured, the aggregate service fees are recognized as revenue ratably over the term of the membership package.

In the event the fair value of the value-added services can be objectively measured, service fees from such value-added services are recognized as revenue ratably over the contracted service period of the value-added services.

(b) *Barter transactions*
When services are exchanged or swapped for services which are of a similar nature and value, the exchange is not regarded as a revenue generating transaction.

When services are rendered in exchange for dissimilar services, the exchange is regarded as a revenue generating transaction. The revenue is measured at the fair value of the services received, adjusted by the amount of any cash or cash equivalents transferred. When the fair value of the services received cannot be measured reliably, the revenue is measured at the fair value of the services provided in a barter transaction, by reference to non-barter transaction involving similar services, adjusted by the amount of any cash or cash equivalents transferred.